IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| MARYANN BARMORE, as Special Administrator of MARK A. BARMORE, Deceased, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF ROCKFORD, a municipal corporation; STANTON NORTH, Individually and as an Agent and/or Employee of the CITY OF ROCKFORD; and ODA POOLE, Individually and as an Agent and/or Employee of the CITY OF ROCKFORD, <br><br> Defendants. | Case No. 09 C 50236 <br><br> Judge <br> Phillip G. Reinhard <br><br> Magistrate Judge <br> P. Michael Mahoney |

## **MEMORANDUM OPINION AND ORDER**

Defendants Oda Poole ("Poole") and Stan North ("North") were police officers employed with the Rockford Police Department on August 24, 2009 when they fatally shot Mark Barmore. Plaintiff's complaint contains counts for wrongful death and survivorship based on allegations that the use of force by Defendants was not justified. Defendants Poole and North were deposed on June 30, 2011 and July 1, 2011, respectively. They had second depositions on August 25, 2011. At both depositions, both defendants refused to answer certain questions based on claimed privileges. Defendants have also refused to tender "fitness for duty" evaluations for Poole and North. Plaintiff seeks an order compelling Defendants North and Poole to provide oral

1

testimony on certain issues and tender the fitness evaluations.

At his first deposition session, Defendant North testified about certain events relating to the investigation of the shooting. North testified that a number of individuals, including an attorney for the police union, were with him for a walk-through in the basement of the shooting scene . North was asked whether he received any instruction from the police union attorney, and was instructed by his current attorney not to answer the question based on the attorney-client privilege.

Defendant Poole was asked at his deposition about a psychological fitness for duty evaluation that he underwent related to his administrative leave. When asked about the result of the evaluation, Defendant Poole was instructed not to answer based on the physician-patient privilege. Similarly, Defendant North testified that he underwent a psychological evaluation that resulted in a recommendation that he should not return to law enforcement. Defendant North was also seen by a professional for treatment. When asked about the conclusions of the evaluation, North refused to answer based on a physician-patient or psychotherapist-patient privilege. Both Defendants refused to tender a copy of the fitness for duty evaluations.

Defendant North urges the court to find that his assertion of the attorney-client privilege is moot based on his subsequent testimony that the union attorney did not talk to him during the basement walk-through. After being asked a number of questions pertaining to conversations

that took place in the basement walk-through, North stated that he did not talk to the union attorney, and the union attorney did not talk to him. (Def's Mem. in Resp, Dkt. No. 97. Ex. A, pp. 173-75.) The court finds this issue to be moot, and therefore denies Plaintiff's motion to compel as to this issue.

As to the fitness for duty evaluations, Defendants North and Poole both argue that the contents of the evaluations are privileged. While the parties discuss this matter in the context of the evaluations the officers were ordered to undergo by their employer, it is clear that the dispute extends to the content of a variety of visits the defendant officers underwent after the shooting incident. It is helpful, then, to distinguish the nature of the visits made by the defendant officers to psychotherapists or psychiatrists in light of the relevant case law.

The Supreme Court recognized a psychotherapist-patient privilege that protects confidential communications between a licensed psychotherapist or psychologist and his or her patient in the course of diagnosis or treatment in *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). Defendant North was referred by his personal physician, Dr. DeSanti, to Psychologist Melissa Young and Psychiatrist Martin Fields. Defendant North has submitted an affidavit indicating that he expected his communications with these treaters to remain private. It is not clear whether Defendant Poole consulted with a privately retained psychotherapist for the purposes of treatment. The *Jaffee* decision is clear that the content of a visit to a psychotherapist for the

3

purposes of treatment is to remain confidential. Thus, the content of any communications between the Defendants and any privately retained therapist for the purpose of treatment is covered by the privilege.

Some courts have extended the privilege to confidential communications made between a police officer and an examining psychotherapist in the course of a fitness for duty evaluation. *See Scott v. Edinburg*, 101 F.Supp.2d 1017, 1019-20 (N.D. Ill. 2000). Both Defendants were ordered to undergo such an evaluation in this case. Other courts to address this issue have examined whether the patients had a reasonable expectation of privacy under the circumstances. *See . Scott*, 101 F.Supp.2d at 1020 (privilege inapplicable where an officer was informed that his interviews and testing results with the evaluating psychotherapist could be shared with police chief or subpoenaed in a civil context); *but cf. Caver v. City of Trenton*, 192 F.R.D. 154 (D.N.J. 2000) (privilege upheld where policy dictated that psychotherapist disclose only a "pass or fail" recommendation as to fitness of a police officer and no other confidential communications); *Williams v. District of Columbia*, Civ. A. 96-0200, 1997 WL 224921 (D.D.C. Apr. 25, 2997) (same). A threshold question, then, is whether Defendants had a reasonable expectation that the communications underlying the examining psychotherapist's evaluation would remain private. *Scott*, 101 F.Supp.2d at 1020.

An additional concern is whether the nature of the relationship between the Defendants

and their examining psychiatrists or psychologists falls within the policy interests forwarded by the privilege. *See Jaffee*, 518 U.S. at 11. As the Supreme Court explained, "the psychotherapist privilege services the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem." *Id.* In other words, individuals are more likely to be forthcoming in their communications with psychotherapists when they do not fear that those communications could be made public. *Id.* In the context of police communications with examining psychotherapists, the Supreme Court indicated that the community has an interest in ensuring that trained police officers in need of treatment do not remain on the job. *Jaffee*, 518 U.S. at 11 n.10. It would follow that when officers have a reasonable expectation that their communications with an examining psychotherapist for the purpose of a fitness-for-duty evaluation will remain confidential, their communications should be privileged.

Defendant North was directed to consult with Norman Dasenbrook, MS, LCPC by his employer, the Rockford Police Department. Defendant North's affidavit states that he was advised that the substance of his communications with Mr. Dasenbrook would remain confidential, and that limited third parties would only be advised of a "fit" or "unfit" decision. This admonition is likely to have created a reasonable expectation of confidentiality such that Defendant North had no reason to refrain from making statements based on privacy concerns.

5

*Cf. Scott*, 101 F.Supp.2d at 1020 (officer found to have refrained from making certain statements because the information was not confidential). There is also a public interest in Defendant North receiving a diagnosis or recommendation regarding his potential return to work. The court finds Defendant North's communications with Mr. Dasenbrook to be covered by the privilege.

Defendant Poole indicated that between January 2011 and June 2011 he was ordered to undergo a psychological Fitness-for-Duty Evaluation and exercised his right to a second evaluation by an individual of his choosing. Poole says he was advised that his statements to the psychotherapists would not be made public or disclosed beyond a small group of Rockford Police Department officials. Though the information before the court is less detailed as to what assurances Defendant Poole actually received, it appears that Poole had a reasonable expectation that his evaluation would not be shared for any other purpose. In addition, the public interest described by the Supreme Court in its *Jaffee* decision would apply with equal weight to Defendant Poole. *Jaffee*, 518 U.S. at 11 n.10. Therefore, the finds Defendant Poole's communications to be covered by the psychotherapist-patient privilege.

Where the privilege is found to apply, the communications made by the Defendants are protected and no further balancing of interests is required. *Jaffee*, 518 U.S. at 17-18. Therefore, Defendant North's communications with his privately retained psychiatrist are privileged. Those communications made by both officers in relation to their fitness-for-duty evaluations, and the

6

evaluations themselves, are also privileged.

A third type of psychotherapist-patient interaction is one in which the patient is applying for some type of benefit. Defendant North was ordered to submit for evaluations by three different psychiatrists in relation to his application for disability benefits from the Rockford Police Pension Fund. North again submits to the court that he expected and continues to expect that the results of the evaluations would be used only within the pension application process and not disclosed in any other forum. While Defendant North had a reasonable expectation that the substance of his communications would remain out of the general public, it is clear he expected some information to be released to some third parties. The public interest justifying the privilege also requires that the information be exchanged in the course of diagnosis or treatment such that it will provide a benefit to the community. *Jaffee*, 518 U.S. at 11. It is not clear that protecting the confidentiality of communications in the context of an application for disability benefits rises to the same level of public concern as the interests described by the Supreme Court in *Jaffee*. The court will not extend the psychotherapist-patient privilege to Defendant North's communications with psychiatrists in relation to his application for disability.

Where the court has found that communications are not privileged, it should still determine whether the requests are reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1). The information need not be admissible in court for it to be

7

discoverable. *Id.* North's application for disability benefits arose as a direct result of the shooting, and at least some of his communications were likely to relate to the events at the heart of this case. Therefore, the court finds there to be at least the potential that the communications could lead to the discovery of other evidence or material that could be used for impeachment at trial.

For the foregoing reasons, Plaintiff's motion to compel is granted, in part. Defendant North's communications with psychologists or psychotherapists relating to his application for disability benefits are not privileged, and the parties may proceed with appropriate discovery as to that information.

**E N T E R:**

_____
**P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**

**DATE**: _____2/7/2012_____