# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 50236 | **DATE** | 5/11/2012 |
| **CASE TITLE** | Barmore vs. City of Rockford, et al. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, the court denies North's motion to reconsider [#113], grants plaintiff's objection to the Magistrate Judge's order [#130], and grants the motion to compel disclosure of the fitness evaluation of North and Poole.

*Philip G. Reinhard*

■ [ For further details see text below.]　　　　　　　　　　　　　　　　　　　　　　　　　Electronic Notices.

## STATEMENT - OPINION

Plaintiff, Maryann Barmore, filed before the Magistrate Judge a motion to compel, seeking to have defendants, Stanton North and Oda Poole, disclose their respective psychological evaluations related to their fitness for duty. Plaintiff further seeks disclosure of the psychological evaluation of North related to his application for disability benefits.

In an order dated February 7, 2012, Magistrate Judge Mahoney ruled that plaintiff is not entitled to either defendant's fitness evaluation because they are protected by the psychotherapist-patient privilege as recognized by the United States Supreme Court in Jaffe v. Redmond, 518 U.S. 1 (1996), and that neither defendant waived the privilege. The Magistrate Judge did allow disclosure of the psychological evaluation related to North's disability application because it was not covered by the psychotherapist-patient privilege.

Plaintiff filed a motion for relief pursuant to Fed. R. Civ. P. 59(e) directed at that portion of the February 7 order regarding Poole's fitness evaluation based on "newly discovered evidence" consisting of the deposition testimony of Chief Epperson regarding the disclosure of Poole's fitness evaluation to certain police officials. The Magistrate Judge denied the Rule 59(e) motion in an order dated March 15, 2012.

Plaintiff has now filed with this court an objection to the Magistrate Judge's order of February 7, 2012, contending that both Poole's and North's fitness evaluations should be disclosed because neither qualifies for protection under the psychotherapist-patient privilege. North has also objected to the February 7 order, arguing that his psychological evaluation related to his disability benefits is covered by the psychotherapist-patient privilege and should not be disclosed.

Upon objection, the District Court must review the relevant part of the Magistrate Judge's decision, and, in the case of a non-dispositive matter, set aside any part of the order that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); Schur v. L.A. Weight Loss Centers, Inc., 577 F. 3d 752, 760 (7th Cir. 2009). The standard of review is "particularly high," and clear error in this context means that the court can overturn the Magistrate Judge's ruling only if it is left with a definite and firm conviction that a mistake has been made. Rawat v. Navistar Int'l Corp., 2011 WL 6097772, * 1 (N.D. Ill. Dec. 5, 2011) (citing Weems v. Samsung Heavy Industries Co., Ltd., 126 F. 3d 926, 943 (7th Cir. 1997)).

The controlling authority on the issue before the court is the Jaffe case. In Jaffe, the Court held for the first time that a psychotherapist-patient privilege existed pursuant to Fed. R. Evid. 501. In doing so, the Court began by

pointing out that historically it has been a "fundamental maxim" that the public has a "right to every man's evidence." Jaffe, 518 U.S. at 9. Thus, in considering whether to recognize any such privilege, the Court was required to start with the primary assumption that there is a "general duty" to give what testimony one is capable of giving and that any exemption to that general rule is "distinctly exceptional" as a derogation to that rule. Jaffe, 518 U.S. at 9. Therefore, exceptions from the general rule "disfavoring testimonial privileges" must be justified by a public good that transcends the "normally paramount principal of utilizing all rational means for ascertaining the truth." Jaffe, 518 U.S. at 9. In light of these established principles, the Court went on to decide whether a privilege protecting confidential communications between a psychotherapist and his patient promotes important interests sufficient to outweigh the need for probative evidence. Jaffe, 518 U.S. at 9-10.

In recognizing the privilege in the context of a police officer who voluntarily sought psychological evaluation and treatment,[1] the Court identified two broad reasons for doing so. First, it relied on the need for a confidential relationship to promote "successful treatment." Jaffe, 518 U.S. at 10. By protecting the confidentiality of communications between a psychotherapist and his patient, the privilege serves an important private interest. Jaffe, 518 U.S. at 11.

The Court also espoused a public interest underpinning the privilege. The Court's prior cases clarified that an asserted privilege must "serve public ends." Jaffe, 518 U.S. at 11. The psychotherapist-patient privilege serves the public interest by facilitating the "provisions of appropriate treatment" for individuals suffering the effects of a mental or emotional problem. Jaffe, 518 U.S. at 11. The mental health of our citizens is a public good of transcendent importance. Jaffe, 518 U.S. at 11. In the context of police officers who "face stressful circumstances that may give rise to anxiety, depression, fear, or anger," the entire community may suffer if police officers are not able to receive effective "counseling and treatment" after traumatic incidents. Jaffe, 518 U.S. at 11 n. 10. This is so because either trained officers leave the force prematurely or because those in need of "treatment" remain on the job. Jaffe, 518 U.S. at 11 n. 10.

Accordingly, the Court held that confidential communications between a licensed psychotherapist and his patient in the course of "diagnosis and treatment" are protected from compelled disclosure under Rule 501. Jaffe, 518 U.S. at 15. And, like other such privileges, the "patient" can waive the privilege. Jaffe, 518 U.S. at 15 n. 14.

Since the Jaffe decision no federal court of appeals decision has addressed the precise issue before this court as to whether the privilege applies in the situation of a required psychological evaluation related to fitness for duty following a traumatic incident involving a police officer. On the other hand, there have been several decisions by district court judges or magistrate judges addressing the exact issue. The majority of those decisions have ruled that a fitness evaluation in this context is in fact covered by the psychotherapist-patient privilege recognized in Jaffe.[2] See, e.g., Scott v. Edinburg, 101 F. Supp. 2d 1017, 1019-20 (N.D. Ill. 2000). A few courts have ruled that the privilege does not apply at all in the context of a required psychological evaluation following a traumatic incident involving an officer. See, e.g., Kamper v. Gray, 182 F.R.D. 597, 598-99 (E.D. Mo. 1998). The latter decisions have reasoned that the psychological evaluation in the context of a fitness evaluation is qualitatively different from the context in which was considered in Jaffe. With all due respect to the various lower court decisions concerning the threshold issue of whether the psychotherapist-patient privilege applies in this context, none of those rulings is binding on this court. Accordingly, in the absence of other binding precedent, the court draws its guidance from the seminal decision in Jaffe.

The dispositive question is whether a fitness evaluation such as those conducted with North and Poole involve the "diagnosis and treatment" of the officers for the purpose of restoring their mental health. The court finds the answer to be no. The purpose of the fitness evaluations was to assist the police department in deciding whether these officers were in sufficient mental health to continue their official duties. It clearly was not for the purpose of treatment. Perhaps such an evaluation could lead to additional diagnostic evaluation and counseling for treatment purposes,[3] but its purpose here was to assess fitness for duty and not for treatment.

It is a somewhat closer question on the issue of diagnosis. While the Supreme Court included diagnosis in its holding, it did so only in conjunction with the concept of treatment. It would be an unreasonable extension of the Jaffe holding to include within the meaning of diagnosis related to treatment a psychological evaluation as it related to the ability to perform the required functions of a police officer. This is also a logical interpretation of diagnosis as used by the Court as treatment necessarily anticipates a prefatory diagnosis by a health care provider. To give full effect to the psychotherapist-patient privilege, the Court needed to include confidential communications related to diagnosis as they

would be part and parcel of any treatment.

Finding that the privilege does not extend to the fitness evaluations that took place in this case runs afoul of neither the private nor the public interests identified by the <u>Jaffe</u> Court. An officer who is required to undergo a fitness evaluation following a traumatic incident such as a shooting will not be deterred from providing information "necessary for successful treatment" because treatment is not the purpose of the evaluation. Likewise, the public interest in facilitating the mental health treatment of its citizens will not be furthered because the evaluation is not being conducted for treatment purposes. Rather, its purpose is to assess an officer's ability to continue in his chosen profession.

Nor does this decision detract from the purposes underlying the privilege as set forth in <u>Jaffe</u>. This ruling is limited to the narrow circumstances of this case and should not be read in any way to apply to the situation of an officer voluntarily obtaining a psychological evaluation purely for treatment purposes.

Additionally, the court finds the fitness evaluation to be categorically different from a psychological evaluation for purposes of medical diagnosis and treatment. In the latter, an officer is a patient desiring to get well. In the former, he is an employee hoping to keep his job. Clearly, the information obtained from each respective evaluation will be different and will be used for different purposes. Similarly, the motivations and expectations of the officer in providing information will vary with the nature of the particular evaluation.

Further, while one might reasonably expect that his communications with a treating psychologist would be held in confidence, the same is not true for someone in North or Poole's situation. An officer undergoing a fitness evaluation would certainly think that the information he provides in relation thereto would be accessible at least to the decision makers in his department. Despite asserted representations[4] from the department that such information would not be disclosed to third parties, neither defendant could not reasonably rely on such representations in this context.

For all these reasons, the court finds that the fitness evaluations in this case are different from psychological evaluations for the purpose of diagnosis and treatment as contemplated by the Supreme Court when it recognized the psychotherapist-patient privilege. To extend the privilege to this type of situation would be to run afoul of the well-established rule that the public is entitled to "every man's evidence" and that departures from that general rule disfavoring testimonial privileges must be "distinctly exceptional." Therefore, the court respectfully disagrees with the well-reasoned decision of the Magistrate Judge. The court grants the motion to compel disclosure of the fitness evaluations of both North and Poole to the extent set forth in this order. Based on these same reasons, the court agrees with the Magistrate Judge that North's psychological evaluation related to his disability application should also be disclosed. If any issues arise as to the disclosures compelled herein, application should be made to the Magistrate Judge for any rulings thereon.

1. The care provider in <u>Jaffe</u> was actually a licensed social worker which the Court expressly included within the privilege. 518 U.S. at 15-17.

2. Most of those cases have also applied a waiver analysis to dispose of the issue of whether disclosure was appropriate notwithstanding the privilege.

3. Of course, any psychological diagnosis and treatment would clearly be covered by the privilege.

4. While there is a discrepancy between North's deposition and affidavit in this regard, the court accepts that such disclosures were made for purposes of this order.